1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.G.,<br><br>                              Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>                              Defendant. | Case No.: 19-cv-1252-TWR-AHG<br><br>**AMENDED ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITHOUT PREJUDICE**<br><br>**(Doc. No. 13)** |

United States of America ("Defendant" or "United States") moves to dismiss with prejudice Plaintiff M.G.'s ("Plaintiff") complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. (*See* Doc. No. 13.) Plaintiff filed an opposition to Defendant's motion to dismiss. (*See* Doc. No. 18.) Defendant filed a reply in support of the motion. (*See* Doc. No. 19.) Pursuant to Civil Local Rule 7.d.1, the Court finds the matter suitable for determination on the papers and without oral argument. For the reasons discussed herein, the Court **GRANTS** Defendant's motion to dismiss and **DISMISSES WITHOUT PREJUDICE** Plaintiff's cause of action for negligence to the extent it is predicated on Defendant's failure to warn and Defendant's negligent supervision and retention.

## I.     BACKGROUND

Plaintiff brings this complaint under the Federal Torts Claim Act ("FTCA"). (First Amended Complaint ("FAC"), Doc. No. 10 ¶ 1.) Plaintiff alleges her psychiatrist, Leon

1

Fajerman, "committed acts of sexual harassment and negligent physical contact against" Plaintiff for six months—from "January 2017 through June 2017." (*Id.* ¶¶ 3, 26.) The events took place at San Ysidro Health Center, a federally qualified health center, where Plaintiff claims Dr. Fajerman has a "history and practice of sexually assaulting and attacking his patients." (*Id.* ¶¶ 4–5.) Plaintiff states, unbeknownst to her, Dr. Fajerman was being investigated for similar conduct by the Medical Board, resulting in his license being suspended in July 2017. (*Id.* ¶¶ 35, 39–40.) On "January 18, 2019, Dr. Fajerman was sentenced to three years of probation and 365 days of house arrest" after pleading "guilty to felony sexual contact with seven patients and misdemeanor sexual battery." (*Id.* ¶¶ 45–46.)

## II.   PROCEDURAL HISTORY

On July 8, 2019, Plaintiff filed her complaint against Defendant, alleging claims for negligent failure to advise or warn, and negligent hiring, supervision, and retention under the FTCA. (Complaint ("Compl.") Doc. No. 1 ¶ 46.) Then on December 19, 2019, Plaintiff filed an amended complaint alleging claims for negligent supervision and retention under the FTCA. (FAC ¶ 54.) On January 21, 2020, Defendant filed a motion to dismiss for lack of subject matter jurisdiction pursuant to the Federally Supported Health Centers Assistance Act ("FSHCAA"), the FTCA's waiver of sovereign immunity, and the discretionary function exception. (Doc. No. 13.) Plaintiff partially opposed the motion, and Defendant replied. (Doc. Nos. 18–19.) This order follows.

## III.   LEGAL STANDARD

### A. __Motion to Dismiss for Lack of Subject Matter Jurisdiction__

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Accordingly, "[a] federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). The party asserting subject matter jurisdiction has the burden of persuasion for establishing it. *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010). Pursuant to Rule 12(b)(1), a party may seek dismissal of an action

2

for lack of subject matter jurisdiction "either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). Where the party asserts a facial challenge, the court limits its inquiry to the allegations set forth in the complaint. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The Court assumes Plaintiff's "[factual] allegations to be true and draw[s] all reasonable inferences in [her] favor." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). Where the party asserts a factual challenge, the Court may consider extrinsic evidence demonstrating or refuting the existence of jurisdiction without converting the motion to dismiss into a motion for summary judgment. *Id.* Defendant argues Plaintiff's complaint fails to state a claim that is facially outside of the FSHCAA or the discretionary function exception to the FTCA. (Doc. No. 13 at 2.) Thus, the Court considers the allegations in the complaint and draws all reasonable inferences in favor of Plaintiff.

## B. Federal Tort Claims Act

As a general principle, the United States "may not be sued without its consent. . . ." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). The FTCA, however, is an example of the federal government consent to be sued for certain types of actions. The FTCA provides that the United States may be sued "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 42 U.S.C. § 1346(b). The FTCA provides the exclusive remedy for tort lawsuits against the United States and allows the United States to be held liable to the same extent as a private employer under state law. 28 U.S.C. § 2679. Thus, California law governs this FTCA case. 28 U.S.C. §§ 1346(b)(1), 2674.

The FSHCAA, 42 U.S.C. § 233, extends the application of the FTCA to certain public health entities, their employees, and qualified contractors receiving federal grants under 42 U.S.C. § 254(b). The entities typically covered by the FSHCAA are community health centers that receive federal grants to serve underprivileged populations regardless of their ability to pay for service. H.R. Rep. No. 104-398 at 5 (1995).

# IV.   DISCUSSION

Defendant argues the Court must dismiss the following claims: (1) failure to warn and advise Plaintiff of Dr. Fajerman's inappropriate conduct leading to his license being reviewed; and (2) negligent supervision and retention of Dr. Fajerman.

The Court notes that Plaintiff's partial opposition to Defendant's motion to dismiss states that Plaintiff does not allege Defendant's "failure to warn her of Dr. Fajerman's suspended license and history of sexual misconduct is independently actionable under the FTCA." (Doc. No. 18 at 2). Thus, the Court **GRANTS** Defendant's motion to dismiss to the extent Plaintiff does not oppose the dismissal of the failure to warn and advise claim. Next, the Court turns to Defendant's motion to dismiss Plaintiff's negligent supervision and retention claim for lack of subject matter jurisdiction.

## A. Negligent Supervision and Retention Are Related Functions under the FHSCAA

Defendant argues that the San Ysidro Health Administration's ("SYH") supervision and retention of Dr. Fajerman does not fall within the scope of FSHCAA's and FTCA's waiver of sovereign immunity because these are "administrative/human resources/employment [in] nature" that are "not the performance of medical, surgical, or dental functions." (Doc. No. 13 at 7). Additionally, Defendant continues to argue that "related functions" as stated in FSHCAA does not encompass "supervisory and retention decisions." (*Id.* at 9.) Plaintiff retorts that the supervision and retention of a physician is a "related function" under the FSHCAA. (Doc. No. 18 at 7).

In the Court's recent decision in a companion case, the Court held that the plaintiff established a basis for jurisdiction in her negligent hiring, supervision, and retention claim based on the FSHCAA because the psychiatrist's "actions were related to his treatment of [plaintiff] and appears . . . to have arisen from his employment." *Sanchez v. United States*, No. 18-CV-1550-AJB-AGS, 2019 WL 3766615, at *4 (S.D. Cal. Aug. 9, 2019). The Court in *Sanchez* based its analysis from two cases. First, it reasoned that a "[h]ealth [c]enter's obligation . . . for vetting its physicians are 'inextricably woven into [its] performance of

4

medical functions." *Brignac v. United States*, 239 F. Supp. 3d 1367, 1377 (N.D. Ga. 2017) (quoting *Teresa T. v. Ragaglia*, 154 F. Supp. 2d 290, 300 (D. Conn. 2001)). Second, the Court distinguished the plaintiff's case from another case where the court there recognized the sexual assault and murder of the victim was not related to the performance of dental functions. *See La Casa de Buena Salud v. United States*, No. CIV 07-238 JB/RHS, 2008 WL 2323495, at *20 (D.N.M. Mar. 21, 2008). However, the Court eventually granted the United States' motion to dismiss the plaintiff's negligent hiring, supervision, and retention claim for lack of subject matter jurisdiction on the basis that the discretionary function exception applies. *Sanchez*, 2019 WL 3766615, at *4.

Here, Defendant mainly raises similar arguments as those in *Sanchez* and admits they "failed to persuade the Court[.]" (Doc. No. 13 at 13–14.) Because this case raises substantially similar issues, the decision in *Sanchez* is dispositive. However, the Court acknowledges Defendant advances an additional argument and contends that the phrase "personal injury . . . resulting from the performance of medical, surgical, dental, or related functions" is ambiguous and the Court should give *Auer* deference to the U.S. Department of Health Services' ("HHS") limited application of the phrase to claims that "sound in medical malpractice." (Doc. No. 13 at 14.)

The *Auer* deference doctrine has recently been reassessed in a case before the United States Supreme Court about a "Vietnam War veteran seeking disability benefits from the Department of Veterans Affairs (VA)." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2409 (2019). The Court laid out the following markers to be met before *Auer* deference is applied: (1) the regulation is genuinely ambiguous and a court must exhaust all the traditional tools of construction; (2) the agency's interpretation must be reasonable, under the text, structure, and history of the regulation; (3) the agency's interpretation must implicate its substantive expertise; (4) the interpretation must be the agency's authoritative or official position reflecting the agency's view, not merely an ad hoc statement; and (5) the agency's reading of the regulation must reflect fair and considered judgment. *Id*. at 2415–17; (*See* Doc. No. 19 at 3.) Although this Court recognizes that *Auer* deference gives agencies "significant

leeway to say what its own rules mean[,]" the Court emphasizes that *Auer* deference does not "bestows on agencies expansive, 'unreviewable' authority." *Id*. at 2415, 2418. "In short, courts retain the final authority to approve—or not—the agency's reading of a notice-and-comment rule." *Id*. at 2420.

Defendant urges this Court to conclude that the phrase "personal injury . . . resulting from the performance of medical, surgical, dental, or related functions" is ambiguous after applying all traditional tools of interpretation. (Doc. No. 19 at 3–4.) Although similar arguments have been raised in *Sanchez*, the Court does not find that the phrase falls within the realm of genuine ambiguity. Specifically, courts recognize the phrase as a form of medical malpractice as Defendant suggests. *See Brignac*, 239 F. Supp. 3d at 1378 (holding plaintiff's negligent hiring and retention claim "arguably sounds in medical malpractice[.]"); *see also La Casa*, 2008 WL 2323495, at *20 (remarking the "[c]ourt need not decide whether negligent hiring, supervision, and retention of a doctor is never a form of medical malpractice under the FSHCAA. Such activities, under certain circumstances, could be medical malpractice[.]").

Moreover, even if this Court defers to HHS' interpretation, the FTCA Health Center Policy Manual ("Policy Manual") where Defendant points provides specific examples of additional activities supporting the notion that supervision is an "act[] or omission[] of a covered entity." U.S. Dep't of Health & Human Servs., Health Res. & Servs. Administration, *Federal Tort Claims Act Health Center Policy Manual*, at 10 (July 21, 2014), available at https://bphc.hrsa.gov/sites/default/files/bphc/ftca/pdf/ftcahcpolicymanualpdf.pdf. The Policy Manual specifies:

> [T]he *supervision* by a covered entity obstetrician of hospital staff during the delivery of a covered entity's patient is covered by the FTCA when the care to the . . . patient is a covered activity within the covered entity's approved scope of project and is within the scope of employment of the covered individual.

*Id*. at 10 (emphasis added). Similarly, SYH's lack of supervision with regards to Dr. Fajerman's inappropriate conduct towards Plaintiff is a kind of activity covered because the supervision is within SYH's project scope and Dr. Fajerman's psychiatric services are within his employment scope as defined in the Policy Manual. *Id*. at 8. Thus, the Court finds SYH's supervision and retention of Dr. Fajerman are related functions under the FSHCAA.

## B. <u>Discretionary Function Exception</u>

Having determined that SYH's supervision and retention of Dr. Fajerman are related functions under the FSHCAA, the Court next turns to whether the discretionary function exception under the FTCA applies. Where suit is brought against the United States, federal courts have no jurisdiction absent the United States' consent to be sued. *See United States v. Mitchell*, 445 U.S. 535, 538 (1980). Certain federal statutes provide limited exceptions to this general rule. For example, the FTCA grants the federal district courts exclusive jurisdiction over civil actions against the United States for damages "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment. . . ." 28 U.S.C. § 1346(b)(1).

The discretionary function exception ("DFE") limits FTCA's broad waiver of sovereign immunity. This exception precludes claims against the United States which are "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).  In order to determine whether the discretionary function exception applies, a court must engage in a two-step inquiry: (1) the court must determine whether the challenged conduct involves an element of judgment or choice, *see Berkovitz v. United States*, 486 U.S. 531, 536 (1988); and (2) if the conduct involves some element of choice, the court must determine whether the conduct implements social, economic, or political policy considerations, *see Gasho v. United States*, 39 F.3d 1420, 1435 (9th Cir. 1994). Plaintiffs are required to advance a claim that is facially outside the discretionary function exception

in order to defeat a motion to dismiss. *Prescott v. United States*, 973 F.2d 696, 702 (9th Cir. 1992).

Here, Defendant argues that even if SYH's supervision and retention of Dr. Fajerman are "related functions" under the FSHCAA, which waives the sovereign immunity, it is still susceptible to a DFE analysis. First, Defendant contends step one of the DFE analysis is satisfied because "Plaintiff does not allege that a federal statute, regulation, or policy required a specific course of action by SYH officials regarding the supervision or retention of Dr. Fajerman." (Doc. No. 13 at 19.) Second, Defendant argues step two of the DFE analysis is also "satisfied because SYH's employment decisions based on considerations of public policy . . . are discretionary acts the [DFE] removes from the FTCA's waiver of sovereign immunity." (Doc. No. 13 at 22.) Applying the two-step test here demonstrates that the discretionary function exception bars Plaintiff's FTCA claim.

### 1. The challenged conduct involves an element of judgment or choice.

In determining whether an action or omission falls within the DFE, the court starts with whether the challenged conduct involves an element of judgment or choice. "[T]he requirement of judgment or choice is not satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'" *U.S. v. Gaubert*, 499 U.S. 315, 322 (1991) (quoting *Berkovitz*, 486 U.S. at 536). "The exception covers only acts that are discretionary in nature . . . and 'it is the nature of the conduct, rather than the status of the actor" that governs whether the exception applies.'" *Id.* at 335 (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 812 (1984)).

In *Sanchez*, plaintiff "concede[d] the discretionary function generally applies to employment decisions" thus, the Court did not proceed to further discuss the DFE's first step because it was not disputed. 2019 WL 3766615, at *5. Unlike *Sanchez*, Plaintiff here argues SYH failed to follow its mandatory rules, regulations, and protocols "requir[ing] SYH to take action in response to knowledge of or complaints about sexual harassment or

misconduct, including actions to prevent recurrence." (FAC ¶ 37.) According to Plaintiff, this failure to follow SYH's own mandatory policies are not discretionary acts involving an element of judgment or choice. (*See* Doc. No. 18 at 9.) On the other hand, Defendant contends SYH's policies "do not prescribe a specific course for SYH employees to follow regarding their response to allegations of sexual misconduct by Dr. Fajerman," and therefore, SYH has discretion. (Doc. No. 19 at 7.)

Plaintiff specifically states the rules and policies impose an obligation to respond, however, the alleged policies **broadly** requires SYH to "take action" and "prevent its recurrence." SYH employees are not provided with specific guidance or particular conduct to fulfill the obligation. *See French v. United States*, 195 F. Supp. 3d 947, 953 (N.D. Ohio 2016) (quoting *Montez ex rel. Estate of Hearlson v. United States*, 359 F.3d 392, 396 (6th Cir. 2004)) ("calling for government employees to 'provide protection' and 'provide safekeeping' to inmates in federal prison—were not specific enough to give rise to non-discretionary obligations"); *Calderon v. United States*, 123 F.3d 947, 950 (7th Cir. 1997) ("While it is true that this statute sets forth a mandatory duty of care, it does not, however, direct the manner by which the BOP must fulfill this duty. The statute sets forth no particular conduct the BOP personnel should engage in or avoid while attempting to fulfill their duty to protect inmates."). Thus, without **specific** guidelines, SYH's acts involved discretion.

Nevertheless, even if Defendant is required to take action and prevent the recurrence of the sexual assault, SYH's mandatory rules, regulations, and protocols Plaintiff is referring to does not rise to the level of federal law. Defendant argues SYH's alleged policies are irrelevant to the analysis of DFE step one because these "are not federal statutes, regulations, or policies . . . prevent[ing] the [DFE] from applying at step one." (Doc. No. 13 at 22.) Defendant points out SYH is an employee for a limited purpose and not a federal agency able to "promulgate rules, regulations, protocols, or policies abrogating the United States' sovereign immunity protection." (Doc. No. 13 at 21–22.) In order for SYH to have no discretion, its actions must be governed by a specific federal

9

statute, regulation, or policy. *Berkovitz*, 486 U.S. at 536. The rules and policies of SYH at issue here are not federal regulations or policies. *See Big Owl v. United States*, 961 F. Supp. 1304, 1308 (D.S.D. 1997) (finding that Tribal School Board is an employee of the Bureau of Indian Affairs and its staff handbook does not rise to the level of federal statute, regulation, or policy). This Court finds Defendant's rationale persuasive that it is unlikely "each of the numerous health centers across the country deemed to be Public Health Center employees for purposes of requiring certain suits to be brought against the United States could promulgate their own policies that widened the potential liability against the United States' fisc." (Doc. No. 13 at 22). In sum, the Court finds that step one of the DFE analysis satisfied.

**2. The conduct implements social, economic, or political policy considerations.**

Next, under the two-step test, this Court must consider "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 322–23 (quotation marks omitted). With regard to the second step of the DFE analysis, generally, the decisions relating to the hiring, supervision, and retention of employees involve policy judgments of the type Congress intended the discretionary function exception to protect. *See Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir. 2000) (holding negligent employment, supervision and training claims "fall squarely within the discretionary function exception"); *see also Gourgue v. United States*, No. 12CV-1490-LAB, 2013 WL 1797099, at *2 (S.D. Cal. Apr. 29, 2013) ("[T]he Government's decision of how to train and supervise its employees is the kind of decision that the discretionary function was designed to protect because it is susceptible to a policy analysis."). The challenged action "need not be actually grounded in policy considerations," it simply needs to be, "by its nature, susceptible to a policy analysis." *Miller v. United States*, 163 F.3d 591, 593 (9th Cir. 1998).

Plaintiff argues that DFE does not apply in situations when a defendant failed to act in response of an illegal conduct. *See Tonelli v. United States*, 60 F.3d 492, 496 (8th Cir. 1995). In *Tonelli*, the court held the DFE does not apply because the post office failed to

act when it had notice of a postal employee tampering with the plaintiff's mail, thus the choice no longer involves policy considerations. *Id*. at 494. However, this Court is not bound by the Eight Circuit decision when the Ninth Circuit has applied the discretionary function exception in similar circumstances and reached a contrary conclusion.

This case is more analogous to *Doe v. Holy See*, 557 F.3d 1066 (9th Cir. 2009). There, the plaintiff claimed the Church negligently supervised and retained a priest whom it knew or should have known that "had a history of sexually abusing children." *Id.* at 1083. The court held the plaintiff's causes of action for negligent hiring and supervision, and failure to warn are barred by the discretionary function exception. *Id*. at 1085. The court reasoned that some of the policy considerations affecting the Church's decision could have been the harm to its reputation, the effect of pastoral stability on parishioners' well-being, and staffing shortages. *Id*. Thus, the court concluded the Church's decision was susceptible to policy considerations. *Id*.

Here, Plaintiff alleges "SYH knew or should have known about Dr. Fajerman's history and practice of sexual contact (or attempted sexual contact) with patients," and "he should not have been allowed to continue seeing female patients unattended." (FAC ¶ 54.) In Opposition, Plaintiff asserts *Holy See* "offers no reason to depart from *Brignac* and *Tonelli*" because the court's analysis did not consider the argument regarding defendant's failure to act in response to illegal conduct. (Doc. No. 18 at 10.) Although the Ninth Circuit in *Holy See* did not further discuss the argument on failure to act in response to an illegal conduct, it impliedly considered the argument by reversing the holding of the district court where it denied the defendant's motion to dismiss relying on the reasoning in *Tonelli*. For the purposes of the second prong of the two-step test, the decision regarding supervision and retention of Dr. Fajerman is still susceptible to policy considerations.

In the instant case, there was a pending investigation by California Medical Board that led to the suspension of "Dr. Fajerman's medical license in July 2017." (FAC ¶ 39.) At this point, the retention of Dr. Fajerman no longer involved any policy considerations. In contrast, SYH might have decided to retain Dr. Fajerman to avoid unnecessarily

11

alarming other patients while investigation was ongoing; SYH might have tried to balance insuring public safety and providing fairness to the accused; or SYH might have some staffing and funding concerns. These types of social, economic, or political policy considerations could have influenced SYH's decision to hire, supervise or retain Dr. Fajerman. This is the kind of judgment the DFE was designed to shield. Therefore, the second prong of the two-step inquiry is met, and Plaintiff's complaint as pled is barred by the DFE. As such, the United States' motion to dismiss is **GRANTED.**

## V.   CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's failure to warn and advise theory as Plaintiff concedes it is not a relevant issue before this Court. (Doc. No. 13.). Moreover, the Court also **GRANTS** Defendant's motion to dismiss without prejudice for lack of subject matter jurisdiction because Plaintiff's claim is barred by the discretionary function exception to the extent it is predicated on Defendant's negligent supervision and retention. *See Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999) ("Article III deprives federal courts of the power to dismiss a case with prejudice where federal subject matter jurisdiction does not exist."). Plaintiff's negligence cause of action survives to the extent that it alleges that Dr. Fajerman was negligent in administering Plaintiff's medical and mental healthcare treatment.

Plaintiff **MAY FILE** an amended complaint on or before November 6, 2020. *Should Plaintiff elect not to file an amended complaint, this action will proceed on Plaintiff's surviving negligence theory.* Defendant **SHALL FILE** a response to Plaintiff's operative complaint on or before November 20, 2020.

**IT IS SO ORDERED.**

Dated:  October 23, 2020

_____
Honorable Todd W. Robinson
United States District Court

12